2021 IL App (3d) 190416

Opinion filed January 29, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| ALAN HAMPTON, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-19-0416 |
| THE BOARD OF TRUSTEES OF THE | ) | Circuit No. 18-MR-2893 |
| BOLINGBROOK POLICE PENSION FUND | ) | |
| and DETECTIVE HENRY CUNNINGHAM, | ) | |
| in His Official Capacity as President of the | ) | |
| Bolingbrook Police Pension Fund, | ) | Honorable |
| | ) | John C. Anderson, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice Wright concurred in the judgment and opinion.
_____

**OPINION**

¶ 1    The defendants, the Board of Trustees of the Bolingbrook Police Pension Fund and the

president of the Fund, Henry Cunningham (collectively, the Board), appealed a trial court order,

reversing the Board's decision to deny the application for a line-of-duty disability pension by the

plaintiff, Alan Hampton, and remanding to the Board with instructions to award Hampton a line-

of-duty pension.

I. BACKGROUND

Hampton was a police officer for the Village of Bolingbrook. He submitted a disability pension application for line-of-duty pension benefits on December 4, 2017, claiming an injury to his left shoulder suffered in performance of duty on December 20, 2016. On that date, Hampton's squad car was struck on the driver's side while he was on duty and assisting with the scene of a traffic accident. Hampton had to be extricated from his squad car.

A hearing was held before the Board on July 12, 2018; Hampton testified, and 16 exhibits were received into evidence. Hampton testified that while he was on duty on December 20, 2016, he responded to an accident with injuries, with lights and sirens. The accident was in the center of the intersection and there was a fire vehicle on scene with activated lights. Hampton tried to position his vehicle to protect the scene by blocking traffic from entering the intersection. While positioning his patrol car, Hampton was struck on the driver's side by another vehicle and his patrol car was spun around. Hampton testified that the side airbags deployed and he had to be extricated from the vehicle. Hampton testified that he suffered an injury to his left shoulder in the accident, causing severe pain to the shoulder. He was not aware of any prior injury to his left shoulder, and he had never sought medical treatment for his left shoulder prior to the accident. Hampton testified that he was transported to the hospital via ambulance. After X-rays of his left shoulder were taken in the emergency room, Hampton was discharged and referred to a specialist.

The records before the Board indicate that Dr. Charles Paik ordered magnetic resonance imaging (MRI) of Hampton's left shoulder[1] on January 23, 2017, which showed moderate glenohumeral osteoarthritis with an associated superior labral tear that extended to the posterior

---

[1]The body of the MRI report states that the examination and test were on the right shoulder, but the order and other reports all reference the left shoulder. We will assume that is an error in the report and the MRI was of the left shoulder.

inferior portion of the labrum and a paralabral cyst. A Bankart lesion was present, along with a Hill-Sachs deformity. The report indicated that the findings may represent the "sequela of multidirectional instability." Hampton was referred to Dr. John Lee, an orthopedic surgeon. When he saw Dr. Lee, Hampton reported weakness, catching/locking, and popping/clicking in his left shoulder. Dr. Lee found that Hampton had left shoulder pain due to degenerative joint disease, a labral tear, and a possible Bankart lesion, with shoulder stiffness. Dr. Lee recommended four more weeks of physical therapy.

¶ 6        Hampton was then referred to Dr. Steven Chudik, an orthopedic surgeon. Dr. Chudik's report, dated February 27, 2017, recommended continued physical therapy to restore motion and strength. Beginning with the physical evaluation and treatment ordered by Dr. Paik, which began on February 3, 2017, Hampton completed seven weeks of physical therapy through PT Solutions, as ordered, two to three times a week. Hampton continued to report pain in the front and back of the left shoulder. According to the medical records, Hampton was making progress but was no longer authorized to continue at that facility. On March 28, 2017, Dr. Chudik referred Hampton for additional physical therapy at ATI Physical Therapy, prescribing therapy two to three times per week for six to eight weeks, to be followed by a work conditioning program. Hampton participated in the therapy at ATI Physical Therapy twice a week for seven weeks, from March 30 to May 12, 2017. Then, based on a May 22 order from Dr. Chudik, Hampton began a four week work conditioning program on May 29, 2017, beginning at the light physical demand level. Hampton completed nine sessions through June 12, which was his last authorized session of work conditioning, according to the ATI Physical Therapy notes. Dr. Chudik's notes indicate that Hampton was ordered to stop work conditioning after two weeks by the workers' compensation insurance carrier to pursue an independent medical examination (IME). Hampton completed

another 11 sessions of work conditioning from July 12 through August 21, 2017. Dr. Chudik's report indicates that Hampton missed a few weeks of work conditioning between July 26 and August 17 due to tests for abdominal pain and instructions from his primary care physician to discontinue work conditioning during that time.

¶ 7     Dr. Chudik ordered a Functional Capacity Evaluation (FCE) on August 14, 2017. He also ordered continued physical therapy and work conditioning. The FCE took place on September 1, 2017, by ATI Physical Therapy. The evaluator, Anthony Buonamici, an athletic trainer, did not have a copy of Hampton's job description from the Bolingbrook Police Department, so he evaluated Hampton in accordance with the definition of police officer I in the Dictionary of Occupational Titles (DOT), which describes a medium level of physical demand. Buonamici concluded that Hampton's capabilities met the lifting requirements of the level, as stated by the DOT, finding Hampton's demonstrated physical demand level to be "heavy," although he noted that Hampton reported a slight increase in pain in his left shoulder at the termination of most lifting activity in the assessment. Buonamici recommended that Hampton could return to work within the FCE guidelines from a functional standpoint, pending physician recommendations. At the visit following the FCE, Dr. Chudik recommended a return to modified duty since Hampton could perform the duties per the FCE but his shoulder injury posed an unacceptable risk if Hampton was involved in a physical altercation or a situation that required physical force. Dr. Chudik noted that Hampton had reached maximum medical improvement (MMI) in his September 15, 2017, report.

¶ 8     Thereafter, Hampton underwent an independent medical exam by Dr. Vishal Mehta, an orthopedic surgeon. According to Hampton, this IME was required by workers' compensation. Dr. Mehta reviewed Hampton's MRI and agreed that it showed moderate glenohumeral degenerative change, a labral tear, and a paralabral cyst. Dr. Mehta opined that Hampton had an underlying

4

glenohumeral osteoarthritis that was aggravated by the work incident on December 20, 2016. Dr. Mehta reached this conclusion because Hampton's shoulder was asymptomatic prior to the accident, and Dr. Mehta did not believe that it was possible for the work injury to result in relatively advanced osteoarthritis one month after the accident. Dr. Mehta found that his objective findings supported Hampton's subjective complaints of pain. Dr. Mehta did not find that Hampton had reached MMI as of June 23, 2017, so additional treatment was indicated. Dr. Mehta recommended continued treatment, but otherwise opined that Hampton could return to work with restrictions of no pushing, pulling, or lifting greater than 20 pounds with the left shoulder, no over-the-shoulder use, and not being put into a position of altercations.

¶ 9       Hampton was examined by three physicians at the Board's direction and expense. Dr. Joshua Alpert, an orthopedic surgeon, certified Hampton disabled from performing full and unrestricted police duties based on aggravation of osteoarthritis in Hampton's left shoulder that was asymptomatic prior to the accident. Dr. Alpert examined Hampton and reviewed Hampton's medical records, the 2017 FCE, the Bolingbrook police department job description, and photographs of the accident. Dr. Alpert described the 2017 FCE as having permanent restrictions, which led to his conclusion that Hampton was disabled from performing full and unrestricted police duties.

¶ 10      Dr. Denis Williams, an orthopedic surgeon, also reviewed Hampton's medical records and examined Hampton. Dr. Williams agreed that Hampton had pre-existing osteoarthritis that was aggravated by the accident, but found Hampton not disabled based on the 2017 FCE. Dr. Williams noted Hampton's concern that, despite the conclusion of the 2017 FCE that Hampton could meet the requirements of his job description, Hampton would not be able to apply a large amount of force that could be required to subdue a suspect, protect his weapon, or defend the public. Dr.

5

Williams does not address that concern, other than again noting that Hampton was found able to perform his job description as tested at the FCE. While Dr. Williams's opinion was that Hampton's osteoarthritis predated the accident, he stated that the accident caused it to become symptomatic.

¶ 11　　　　Dr. Sam Biafora examined Hampton and reviewed his medical records, job description, the FCE, Dr. Mehta's report, and photographs from the accident. In reviewing Hampton's MRI, Dr. Biafora found arthritic change of the glenohumeral joint, a paralabral cyst, and a possible Hill-Sachs deformity, but found no apparent labral tear. Dr. Biafora did review the MRI report that disclosed the labral tear. Dr. Biafora certified Hampton not disabled from performing his duties as a police officer. Dr. Biafora opined that Hampton sustained a temporary exacerbation of pre-existing arthritis in the accident, but it was not a permanent aggravation and did not cause an acceleration of Hampton's left shoulder arthritis. Hampton could be expected to have temporary exacerbations and manifestations of pain with the overall progression of the disease process. Dr. Biafora opined that Hampton was experiencing the natural progression of his arthritis in the left shoulder that was, more likely than not, not related to the accident.

¶ 12　　　　Hampton had a second FCE at Momentum Physical Therapy on August 6, 2018, conducted by Tricia Mitchell, a physical therapist. Hampton's actual job description from the Bolingbrook Police Department was used for this second evaluation. Mitchell concluded that Hampton demonstrated the ability to handle a medium work level, but that he had functional limitations when compared to Hampton's specific job requirements. Specifically, Mitchell found moderately decreased tolerances in below waist and above shoulder reaching, one and two-handed maximum and frequent lifting and carrying, and one and two-handed maximum and frequent pushing and pulling. None of the physicians tasked with providing an opinion about whether Hampton was disabled from performing his duties as a police officer reviewed the second FCE.

¶ 13    The Board denied Hampton's claim for line-of-duty benefits. Hampton filed a motion to open the record to consider the 2018 FCE and to amend his application to include an alternative request for not-on-duty disability pension benefits. The Board allowed the motion to open the record and consider the 2018 FCE but not have it reviewed by the three pension board physicians. It also granted the motion to amend the disability application. The Board again denied line-of-duty disability benefits, and it also denied not-on-duty disability benefits. In its written findings of fact, the Board found that Hampton had no symptoms of arthritis in his left shoulder and that he had not sought any medical treatment for his left shoulder prior to the accident. However, the Board found that Hampton was not disabled for service as a police officer. The 2018 FCE did not cause the Board to change its opinion. The Board found that Hampton's belief that he was unable to perform full and unrestricted police duties was refuted by evidence in the record. The Board discounted Hampton's testimony, finding that it was not wholly consistent with record evidence based on the Board's finding that Hampton failed to attend numerous scheduled physical therapy sessions. The Board's opinion cites to Board Exhibit No. 7 in support, which are Hampton's ATI Physical Therapy records. The ATI Physical Therapy discharge summary dated May 19, 2017, indicates that Hampton completed 16 visits and missed 7 visits. The Board concluded that Hampton was not disabled, so it made no specific finding whether Hampton's injury was incurred in or caused by an act of duty. Hampton sought administrative review in the trial court.

¶ 14    After a hearing, the trial court reversed the Board's decision to deny Hampton's application for a line-of-duty disability pension, finding that there was insufficient competent evidence in the record to support the Board's factual findings and that the Board's findings were against the manifest weight of the evidence. The trial court found that there was no factual dispute that Hampton was subjected to a high impact collision while on duty and positioning his police vehicle

7

to protect the scene of a car accident. Hampton was examined and treated by several doctors, and he underwent four independent medical examinations (the three chosen by the Board and Dr. Mehta for the workers' compensation claim). The trial court found that it was unrefuted that all six doctors who examined Hampton concluded that the accident caused an exacerbation of pre-existing arthritis in his left shoulder, which was previously unknown to Hampton and asymptomatic prior to the accident. The trial court found inherent defects in the opinions of Dr. Williams and Dr. Biafora, which the Board relied on in finding that Hampton was not disabled. Specifically, the defects were that the 2017 FCE did not have a full job description, it noted Hampton's complaints of pain during the 2017 FCE, and it concluded only that Hampton "may attempt a return to work within the [2017 FCE] guidelines from a functional standpoint, pending physician's recommendation." Hampton's treating physician did not return him to full duty after reviewing the results of the 2017 FCE. The Board appealed.

¶ 15                                                    II. ANALYSIS

¶ 16        The Board argues that its decision was not against the manifest weight of the evidence. In administrative review cases, the reviewing court's role is to review the decision of the administrative agency, not the decision of the trial court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). Rulings on questions of fact will be reversed only if they are against the manifest weight of the evidence, which is only when the opposite conclusion is clearly evident. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504-05 (2007). Questions of law are reviewed *de novo*, while mixed questions of law and fact are reviewed under the clearly erroneous standard. *Id.* at 505. The question of whether the evidence of record supports a denial of a plaintiff's application for a disability pension is a question of fact. *Id.*

8

¶ 17     A plaintiff in an administrative proceeding bears the burden of proof. *Id.* Hampton argues that he sustained his burden of proof of showing that he was disabled from being a police officer. Hampton argues that the Board's decision was contrary to the manifest weight of the evidence because the Board ignored relevant evidence and relied on the reports of Drs. Williams and Biafora even though their opinions were unreliable in light of all the evidence in the record before the Board. It is not our role on administrative review to reweigh evidence or to make an independent determination of the facts. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009). Rather, it is our role to determine if the credible evidence, as weighed by the administrative agency, supports the finding of the agency. *Wade*, 226 Ill. 2d at 507.

¶ 18     A police officer is entitled to a line-of-duty pension if, "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service." 40 ILCS 5/3-114.1(a) (West 2018). While disability is not defined in article III of the Illinois Pension Code, it is defined in article V of the Pension Code as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." *Id.* § 5-115. Absent a clearly expressed contrary legislative intent, we apply this definition to this case arising under article III of the Pension Code. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 541 (1997).

¶ 19     In finding that Hampton failed to demonstrate that he suffered an injury to his left shoulder that rendered necessary his suspension or retirement from the police service, the Board credited the opinions of Drs. Williams and Biafora more than the opinion of Dr. Alpert. The Board did not discuss Hampton's other medical records or the opinion of Dr. Mehta. Other than the summaries of the findings of the three IMEs, the Board's only reference to Hampton's MRI results and his

9

other medical records was through Hampton's testimony, which the Board discounted on the basis that Hampton failed to attend numerous scheduled physical therapy sessions. Also, the Board admitted the 2018 FCE into evidence, but did not have it reviewed by any physician and placed greater weight on the 2017 FCE to the extent that it contradicted the 2018 FCE.

¶ 20    We find that the Board's conclusion that Hampton was not disabled from being a Bolingbrook police officer was against the manifest weight of the evidence. The January 2017 MRI objectively shows a labral tear, a paralabral cyst, a Bankart lesion, and a possible Hill-Sachs deformity. Dr. Mehta, who conducted an IME pursuant to workers' compensation, concluded that Hampton's previously asymptomatic pre-existing shoulder condition was aggravated by the December 20, 2016, accident and that Hampton required work restrictions that were possibly permanent as of the date of the examination. Dr. Alpert, who was one of the three physicians to complete an IME at the direction of the Board, concluded that Hampton was disabled from performing full and complete police duties. Dr. Chudik, one of Hampton's treating physicians, recommended that Hampton could return to work on modified duty based on the results of the 2017 FCE, restricting Hampton from situations that required any physical altercations. The Board found that Hampton had not been offered any permanent light or modified duty positions.

¶ 21    Despite this evidence, the Board assigned greater weight to the opinion of Dr. Williams than Dr. Alpert. Dr. Williams opined that Hampton was not disabled, specifically basing his opinion on the 2017 FCE and the fact that Hampton was "able to perform at his job at the description tested at the FCE." As noted above, the 2017 FCE concluded that Hampton could return to work within the FCE guidelines from a functional standpoint based upon the DOT description of police officer, pending physician recommendations. The subsequent physician recommendation from Dr. Chudik, who had ordered the 2017 FCE, was a return to modified duty

10

based on the FCE, since Hampton could perform the duties per the FCE but his shoulder injury posed an unacceptable risk if Hampton's job required him to be involved in a physical altercation or a situation that required physical force. Dr. Williams noted the follow-up with Dr. Chudik and the increased symptoms following the FCE, but he did not consider Hampton's ability to use physical force and subdue resisting individuals as required by the Bolingbrook job description. We conclude that Dr. Williams's conclusions were inconsistent with the facts available to him and the Board erred in assigning greater weight to Dr. Williams's opinion. See *Wade*, 226 Ill. 2d at 507 (Board erred in assigning greater weight to a physician's opinion when his conclusions were inconsistent with the facts and he failed to base his opinion on relevant, material evidence).

¶ 22    We also find that the Board erred in assigning greater weight to the opinion of Dr. Biafora. Dr. Biafora did not limit his opinion to the 2017 FCE, but he opined that Hampton sustained a temporary exacerbation of his pre-existing shoulder arthritis in the accident and it was not a permanent aggravation. In light of all the other record evidence indicating that Hampton's pain did not begin until the accident, and his symptoms had not resolved at any time since the accident, we find that Dr. Biafora's ultimate conclusion of no disability because Hampton had suffered a temporary exacerbation is inconsistent with the facts in the record.

¶ 23    The Board's decision to discount Hampton's testimony on the basis that his "testimony was not wholly consistent with record evidence" because of his "[failure] to attend numerous scheduled physical therapy sessions" is not supported by the record. Hampton testified before the Board that he participated in physical therapy ordered by Dr. Lee and then further physical therapy ordered by Dr. Chudik. Hampton then participated in four weeks of work conditioning. The records support this testimony. The exhibit cited by the Board states that Hampton completed 16 visits and missed 7 visits at ATI Physical Therapy. As noted above, the order from Dr. Chudik was for

11

physical therapy two to three times per week for six to eight weeks, and Hampton completed that therapy as ordered. Also, it should be noted that Dr. Chudik ordered Hampton to undergo a four week work conditioning program at ATI Physical Therapy but the workers' compensation insurance carrier ordered Hampton to stop that program after only two weeks. Dr. Chudik then recommended that Hampton return for another four to six week work conditioning program, which Hampton completed prior to the 2018 FCE.

¶ 24      Lastly, the Board's decision to place greater weight on the 2017 FCE than the 2018 FCE is contrary to the other facts in the record. The 2018 FCE was conducted with the benefit of the full Bolingbrook police department job description. The Board argues that the DOT medium physical demand level is adopted by the Bolingbrook police department job description, so the 2017 FCE was sufficient. It is true that the DOT description of Police Officer I, code 375.263-014, is included in the record immediately after the seven-page Bolingbrook police department job description, dated April 1, 2008. Also, the seven-page job description includes a number of requirements included in the DOT description. However, there is no language contained within the Bolingbrook job description that adopts the one-paragraph DOT description of Police Officer I to the exclusion of the other job requirements. Of note in this case, the Bolingbrook job description requires that the police officer have and maintain the physical condition to subdue resisting individuals, lift and carry equipment and injured/deceased persons, and manually push stalled motor vehicles. Also, the Board discounted the 2018 FCE because it was "conducted by a physical therapist, with unknown qualifications, rather than a medical doctor." The physical therapist who conducted the 2018 FCE had the designations of MPT (Master of Physical Therapy) and DPT (Doctor of Physical Therapy). The 2017 FCE was similarly not conducted by a medical doctor, but a certified athletic trainer.

12

¶ 25     Considering all the evidence in the record, and the fact that the Board erred in relying on certain evidence in support of its decision that Hampton was not disabled, we conclude that the Board's decision was against the manifest weight of the evidence. We note that, other than Hampton's testimony, "we have before us the same records and reports examined by the Board; the doctors did not testify, and thus factors such as the demeanor of testifying witnesses [did] not figure into an assessment of credibility." See *Wade*, 226 Ill. 2d at 506.

¶ 26     The trial court remanded, instructing the Board to award Hampton a line-of-duty pension. The Board argues that it has not determined whether the disability was caused by "an act of duty." Section 5-113 of the Pension Code defines the term "act of duty" as "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman." 40 ILCS 5/5-113 (West 2018). The Board specifically did not make the act of duty finding in its decision after it concluded that Hampton was not disabled. The Board did make the factual findings that Hampton was injured while on-shift, called to the scene of an accident, in a patrol car, and positioning his car to protect the scene.

¶ 27     The question of whether a police officer has suffered a line-of-duty injury is fact specific. *Filskov v. Board of Trustees of the Northlake Police Pension Fund*, 409 Ill. App. 3d 66, 71 (2011). An officer who is injured when on duty does not qualify for an on-duty disability merely because he was on duty. *Buckner v. University Park Police Pension Fund*, 2013 IL App (3d) 120231, ¶ 15 (citing *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, ¶ 71). The critical inquiry is the capacity in which the officer was acting at the time he was injured. *Buckner*, 2013 IL App (3d) 120231, ¶ 15 (citing *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 522 (1986)).

13

¶ 28        Although the Board did not make a finding on the ultimate issue of whether Hampton was injured in the performance of an act of duty, it did make the necessary factual findings for this court to make that finding as a matter of law. *Ashmore v. Board of Trustees of the Bloomington Police Pension Fund*, 2018 IL App (4th) 180196, ¶ 55 (when the facts are not in dispute, whether an officer was injured performing an " 'act of duty' " is a question of law). Based on the Board's findings of fact, we find as a matter of law that Hampton was injured performing an "act of duty." Thus, we affirm the decision of the trial court, which reversed the Board's decision, including remand to the Board with instructions to award Hampton a line-of-duty disability pension.

¶ 29                                    III. CONCLUSION

¶ 30        The judgment of the circuit court of Will County is affirmed.

¶ 31        Affirmed.

14

**No. 3-19-0416**

| | |
|---|---|
| **Cite as:** | *Hampton v. Board of Trustees of the Bolingbrook Police Pension Fund*, 2021 IL App (3d) 190416 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 18-MR-2893; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Richard J. Reimer and Brian J. LaBardi, of Reimer & Dobrovolny PC, of Hinsdale, for appellants. |
| **Attorneys for Appellee:** | Vincent D. Pinelli and Martin T. Burns, of Burke Burns & Pinelli, Ltd., of Chicago, for appellee. |