**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210603-U

Order filed October 26, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| WILLIAM R. BUSSE III, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-21-0603 |
| | ) | Circuit No. 20-MR-2660 |
| THE BOARD OF TRUSTEES OF THE | ) | |
| JOLIET POLICE PENSION FUND, | ) | Honorable |
| | ) | John C. Anderson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Denial of a police officer's application for a disability pension was affirmed on administrative review because the Board's determination that the police officer had not shown by a preponderance of the evidence that he was disabled from full and unrestricted duty was not against the manifest weight of the evidence.

¶ 2     In an action to review the final decision of an administrative agency, the plaintiff, William R. Busse III, appealed the trial court's order affirming the decision of the defendant, the Board of Trustees of the Joliet Police Pension Fund (Board), to deny disability benefits.

I. BACKGROUND

¶ 4        Busse joined the Joliet Police Department in 2013. He injured his right hand in 2017, and on March 8, 2019, he filed an application for a line-of-duty disability pension pursuant to section 3-114.1 of the Illinois Pension Code (Pension Code) (40 ILCS 5/3-114.1 (West 2018)). Busse later amended his application to alternatively seek a not-on-duty disability pension pursuant to section 3-114.2 of the Pension Code (*id.* § 3-114.2).

¶ 5        The Board held a hearing to adjudicate Busse's application for disability benefits on June 29, 2020. There were 18 exhibits admitted into the administrative record, along with Busse's testimony. Busse testified that he was injured while on duty as a police officer on February 23, 2017, when Busse struck a resisting subject on the side or back of the subject's head with Busse's right fist. Busse immediately reported his right hand injury to his lieutenant and was treated that night in the emergency room for pain and swelling at the third proximal knuckle of the long finger. X-rays of the hand revealed no acute fracture or dislocation. Busse was diagnosed with a right hand contusion.

¶ 6        Busse testified that he then returned to unrestricted police duty, despite swelling and pain at that joint. Busse had an appointment with Dr. Alan Chen, a surgeon, on April 19, 2017. Dr. Chen diagnosed Busse with tenosynovitis with bursitis of his metacarpal joint and prescribed anti-inflammatory medication and occupational therapy. Busse began occupational therapy but discontinued a month later without restoring full function. An MRI on May 30, 2017, revealed a partial tear of the metacarpal insertion of the ulnar collateral ligament at the metacarpal joint, subchondral edema, tendinosis, and tenosynovitis. Busse complained of locking, popping, swelling, pain, and diminished grip strength. Dr. Chen operated on September 28, 2017, repairing the middle finger ulnar and radial collateral ligaments. After surgery, Dr. Chen's report indicated

that Busse could not return to duty as a police officer for a minimum of eight weeks. Busse testified that he never returned to full police duty after that surgery. Twelve days after the surgery, Dr. Chen noted a slight drift ulnarly at the metacarpophalangeal joint and there was a question whether Busse damaged the radial collateral repair when he punched the bed when waking up from anesthesia. At Busse's November 28, 2017, follow-up visit with Dr. Chen, Busse was complaining of a popping feeling and drifting in the middle finger. Dr. Chen noted that the extensor tendon subluxed ulnarly with flexion at the metacarpophalangeal joint and there was a notable ulnar deviation of the middle finger. Dr. Chen performed a second surgery on April 5, 2018, repairing an extensor tendon rupture and a tear in the sagittal band. Following the second surgery, Busse participated in therapy, but he testified that he continued to experience tracking issues and discomfort.

¶ 7       Busse sought out a different provider, visiting Dr. Alfonso Mejia on July 19, 2018. Busse had an MRI on September 19, 2018, which showed thickening of the ulnar and radial collateral ligaments in his third joint and bony edema. A follow-up ultrasound revealed an intact tendon that was thickened when crossing the third joint and an ulnar side effusion within the tendon sheath proximal to the joint. Busse had a third surgery, performed by Dr. Mejia on November 30, 2018, a right long finger extensor digitorum communis tendon centralization procedure. Busse then followed up with eight weeks of occupational therapy. Dr. Mejia's final clinic note from April 11, 2019, reports that Busse experienced a strong pulling sensation when he made a fist, but had no weakness, numbness, or tingling. Busse could make a full fist, but it caused him discomfort. Dr. Mejia noted that Busse no longer appeared to have the tracking issue. Dr. Mejia ordered more physical therapy, with a re-evaluation in two months, and ordered that Busse remain off work without the use of his right hand.

3

¶ 8     Busse testified that he had pain and discomfort, as well as stiffness and decreased range of motion after the third surgery. The tracking issue with the joint returned, causing the finger to pop and stick. Busse testified that when the tracking issue occurred, which happened daily, he could not manipulate his fingers in a fluid fashion. Busse testified that he no longer played softball or golf. Busse testified that he did not have confidence that he could adequately handle a firearm, but he had not tried to fire a weapon since the original injury in February 2017. Busse also felt that he would have difficulty restraining and handcuffing a suspect.

¶ 9     Dr. David Tulipan conducted an independent medical evaluation (IME) of Busse on July 18, 2019, pursuant to Busse's workers' compensation claim. Dr. Tulipan noted that Busse's subjective complaints were that Busse had pain with flexion of the right middle finger and experienced a popping of the extensor tendon when it went from full extension into about 45 degrees of flexion. On physical examination, Dr. Tulipan observed a mild ulnar subluxation of the extensor tendon when going from full extension into 45 degrees of flexion. Busse's grip strength on the left was 144 pounds and 48 pounds on the right. Dr. Tulipan opined that Busse's subjective complaints of pain were out of proportion to the injury, and Busse's powerful forearm muscles indicated a disconnect between his upper extremity strength and his subjective complaint of loss of function. Dr. Tulipan did not recommend further surgery for the mild subluxation of the extensor tendon. Dr. Tulipan recommended a Functional Capacity Evaluation (FCE) to objectively determine Busse's exact physical limitations to determine whether he was disabled. Dr. Tulipan recommended a job with no significant gripping of the right hand pending the FCE. Busse returned to work in a light-duty position in July 2019.

¶ 10    A job-specific FCE was performed by Kathleen Majeski, a physical therapist, on December 10, 2019. Majeski concluded that Busse met 100% (21/21) of the reported job demands to function

4

as a master patrol officer. Majeski noted that Busse intermittently demonstrated altered mechanics during tasks that required gripping. During the job simulation tasks of firing a weapon and controlling an active resister, Busse demonstrated an adequate grip with normal pace of movement. An active resister was simulated by using a long handle from the weight machine. Busse was asked to grab the bar and attempt to take it away from the evaluator. Busse was able to grasp the bar firmly and twist it in multiple directions without difficulty. Firing a weapon was simulated using a three-pound weight to simulate a service weapon. Trigger pull was tested with Jamar at position 4, right hand index finger. Busse demonstrated force generation of 30 pounds, 30 pounds, and 25 pounds. Majeski found that Busse's grip strength was significantly decreased on the right hand compared to the left, but within the normal range for his age and gender. Majeski observed Busse's extensor tendon sublux once, while retesting grip strength and trigger strength, but she did not note any effect from the subluxation. On the push and pull test, Majeski reported that Buss demonstrated a 55 horizontal force pound push and pull, which Busse reported was similar to what he might encounter on duty. Busse reported some pain with the pull, but not with the push. Busse was able to close his hand around the bar, although he did so slowly. Majeski found that Busse did not demonstrate any evidence of dexterity deficits during testing. Majeski concluded that Busse demonstrated the physical capabilities and tolerance necessary to perform the essential function of his job.

¶ 11            With regards to the FCE, Busse testified that much of the evaluation did not involve his hand. He did not believe that holding a three-pound weight accurately simulated firing a weapon. He also felt that the active resister simulation was not accurate.

¶ 12            Busse underwent three IMEs, with board-certified orthopedic surgeons, pursuant to section 3-115 of the Pension Code (40 ILCS 5/3-115 (West 2018)). The first was conducted by Dr. William

A. Heller, on February 3, 2020. Dr. Heller reviewed all forwarded medical records, including treatment notes and operative reports from Drs. Chen and Mejia, therapy notes, Dr. Tulipan's IME report, a surveillance video report, and Busse's written job description. Dr. Heller conducted a physical examination, noting some mild residual swelling over the third joint. Busse could make a full fist but was somewhat tentative with the third digit. Dr. Heller did not observe any subluxation in the extensor tendon; he observed slight laxity to ulnar deviation of the collateral ligament when testing flexion and extension, but there was no popping during motion. His grip strength was 180 pounds on the left hand and 60 pounds on the right hand. Dr. Heller concluded that Busse had basically normal range of motion but diminished grip strength in the right hand. Dr. Heller concluded:

> "The claimant's right third MP joint is precluding him from performing full and unrestricted duties due to his weakness of grip and inability to use his right hand in a normal fashion to utilize his firearm and perform restraining maneuvers. The claimant states he has difficulty utilizing his firearm and he feels that the loss of function of the right third MP joint could impair his ability to discharge his firearm appropriately which would obviously interfere with his regular work duties. He also states he would not feel confident utilizing his right hand to restrain a combative suspect or to provide restraining maneuvers such as punching with the right hand."

Dr. Heller does not specifically mention reviewing nor does he reference the FCE. Dr. Heller recommended light duty status on a full-time basis and opined that Busse had reached maximum medical improvement.

¶ 13    Dr. Ajay K. Balaram conducted an IME of Busse on February 4, 2020. Dr. Balaram reviewed Busse's job description and a number of Busse's medical records, but he does not

6

mention reviewing the FCE. Dr. Balaram conducted a physical examination, finding that Busse could made a full composite fist. Balaram observed active subluxation with mild ulnar deviation of Busse's right middle finger with complete flexion. Grip strength in Busse's left hand was 5/5, and 4/5 in the right hand. Dr. Balaram concluded that Busse lacked grip strength in his right hand due to the subluxation of the extensor tendon, which precluded him from performing full and unrestricted police duties. Dr. Balaram opined that Dr. Mejia's April 2019 note that he saw no evidence of subluxation and that the centralization procedure had succeeded was contradicted by Dr. Balaram's examination where he saw active subluxation of the extensor tendon. Thus, Dr. Balaram suggested that another surgery to centralize the tendon was an option that might return Busse to full and unrestricted duty. Dr. Balaram concluded that Busse could perform in a light duty capacity.

¶ 14        Dr. Sanjay K. Patari conducted an IME of Busse on February 13, 2020, which included a physical examination, a review of submitted medical records, and review of Busse's job description. Dr. Patari's report indicates that Busse's complaints were pain with gripping, inability to make a fist in cold weather, his tendon jumping over the metacarpal at times, and discomfort and tightness along the third metacarpophalangeal joint. Busse stated that he did not feel comfortable using a firearm, but he had not gone to a shooting range to attempt to use his firearm since his injury. Dr. Patari's physical examination revealed a moderate enlargement of tissue over the right third metacarpophalangeal joint with positive tenderness located along the ulnar collateral ligament, with mild radial deviation with metacarpophalangeal flexion and with gripping and physical activities. Busse had a 10-degree extensor lag of the third metacarpophalangeal joint. His right hand grip strength averaged 54 pounds. Dr. Patari reviewed the results of the FCE, particularly the firearm simulation and trigger pull. Dr. Patari concluded that Busse did not suffer

from a disabling condition that prevented him from performing full and unrestricted duty as a police officer. Busse subjectively reported that he did not feel comfortable using a firearm or participating in many sports activities, but Dr. Patari found Busse to be in excellent physical condition and the FCE reported no deficit in that Busse was able to accomplish 100% of his evaluation, including firearm and weapon simulation.

¶ 15        Busse testified that he worked a light-duty position from July 2019 until March 2020, but no permanent light-duty position had been offered to him. In addition, Busse had no further surgeries scheduled.

¶ 16        The Board denied disability benefits, concluding that Busse had not proven by a preponderance of the evidence that he was physically disabled from unrestricted duty as a police officer. In its factual findings, the Board noted Dr. Mejia's report from Busse's last appointment with Dr. Mejia on April 11, 2019, which stated that Busse no longer seemed to have tracking issues with the tendon. The Board noted, though, that Dr. Tulipan's July 18, 2019, report indicated that Busse continued to complain of mild persistent subluxation and "popping" of his extensor tendon; Dr. Tulipan's physical examination revealed mild ulnar subluxation of the extensor tendon, but Dr. Tulipan did not note any popping. The Board gave great weight to the FCE, which determined that Busse was able to meet every job demand required for his position with mild pain, even with diminished grip strength. Although Busse's right hand grip strength was "significantly decreased" compared to his left hand, his grip strength still fell within the normal range for his age and gender and was adequate for unrestricted police duty. The Board considered and rejected Busse's objection that the FCE activities did not accurately simulate his job demands. The FCE was ordered by Dr. Tulipan and administered by Majeski, a trained physical therapist. The Board found that Busse presented no evidence calling their expertise or judgment into question, and Busse's

8

assertion that the FCE activities failed to simulate his job demands was only supported by Busse's opinion. The Board made the finding that the FCE activities actually measured Busse's ability to meet the relevant job demands. The Board also gave great weight to Dr. Patari's IME report. He was the only IME provider that specified that he reviewed the FCE, and therefore reviewed Busse's subjective complaints in light of an objective evaluation. When in conflict, Dr. Patari credited the FCE findings over Busse's subjective statements. The Board discounted the IME reports of Drs. Heller and Balaram, finding that they did not evaluate Busse's subjective complaints in light of the objective findings of the FCE report. Both found that Busse had diminished grip strength in his right hand, but neither evaluated this finding in light of the FCE finding that Busse's grip strength, even diminished, was sufficient to perform full and unrestricted police duty. The Board found that Dr. Tulipan's IME report also supported its conclusion that Busse was not disabled. Dr. Tulipan expressed skepticism about Busse's reported pain and limitations and therefore ordered the FCE to determine if Busse was disabled.

¶ 17        Busse filed a petition for review in the circuit court, asking the court to reverse the Board's decision. The trial court affirmed, and Busse appealed to this court.

¶ 18                                    II. ANALYSIS

¶ 19        Busse argues that the Board's denial of his application for a disability pension on the basis that he was not disabled was against the manifest weight of the evidence. Busse contends that the Board ignored five physicians' opinions regarding his disability and instead relied on a single physician's opinion in denying Busse's claim. He argues that the Board ignored its own experts, unrebutted and objective record evidence of Busse's pain, diminished grip strength, and limited movement in his right hand. Busse contends that he is disabled from performing full and unrestricted police duties. The Board argues that it was within its purview to assign weight and

9

credibility to the evidence, and it was not required to adopt a position taken by a numerical majority of the providers.

¶ 20    A police officer is entitled to a line-of-duty pension if, "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service." 40 ILCS 5/3-114.1(a) (West 2018). While disability is not defined in article III of the Pension Code, it is defined in article V of the Pension Code as "[a] condition of physical or mental incapacity to perform any assigned duty or duties in the police service." *Id.* § 5-115. Absent a clearly expressed contrary legislative intent, we apply this definition to this case arising under article III of the Pension Code. *Hampton v. Board of Trustees of Bolingbrook Police Pension Fund*, 2021 IL App (3d) 190416, ¶ 18. The same definition of disability would apply to a not-on-duty disability pension, which a police officer is entitled to if he becomes disabled as a result of any cause other than an act of duty. 40 ILCS 5/3-114.2 (West 2018).

¶ 21    In administrative review cases, we review the decision of the administrative agency, not the decision of the trial court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006), *as modified upon denial of reh'g* (May 29, 2007). Rulings on questions of fact will be reversed only if they are against the manifest weight of the evidence, which is only when the opposite conclusion is clearly evident. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). The question of whether the evidence of record in this case, including Busse's testimony before the Board, supports a denial of his application for a disability pension is a question of fact. *Hampton*, 2021 IL App (3d) 190416, ¶ 16. Our role on review is to determine

if the credible evidence, as weighed by the administrative agency, supports the agency's decision. *Id.* ¶ 17.

¶ 22    In finding that Busse failed to demonstrate that his injury rendered him incapable of performing his duties as a police officer, the Board credited the opinion of Dr. Patari over those of Drs. Heller and Balaram. While all three independent medical doctors examined Busse and reviewed his medical records, only Dr. Patari considered and evaluated the objective findings of the FCE in light of Dr. Patari's own examination in reaching his decision regarding Busse's abilities.

¶ 23    Busse argues that the FCE never tested his ability to handcuff a subject, fire a gun with accuracy, absorb the recoil of a real firearm, or execute baton strikes. The Board considered and rejected Busse's objection that the FCE activities did not accurately simulate his job demands. The FCE evaluated four specific job activities: control an active resister, firing a weapon, trigger pull, and running. The first three were evaluated via simulations. Majeski concluded in the FCE that even with subluxation and reduced grip strength, Busse was able to perform the requirements of the job. Busse failed to put forth any evidence, other than his subjective opinion, that the simulations were not adequate tests for his job requirements. See *Wade*, 226 Ill. 2d at 505 ("Under any standard of review, a plaintiff in an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden.").

¶ 24    The record contained conflicting evidence, and it was the Board's role to weigh the evidence and assess credibility. *Marconi*, 225 Ill. 2d at 540. All the medical professionals were consistent in reporting Busse's grip strength—there does not seem to be any question that his grip strength in his left hand was significantly greater than his grip strength in his right hand. The FCE evaluated Busse's ability to perform the functions of his job despite the diminished grip strength

11

and concluded that Busse could perform all the essential functions of his job. There was credible evidence to support the Board's decision to credit the opinion of Dr. Patari over that of Drs. Heller and Balaram. The Board found that Dr. Patari's report was the most thorough because he specifically evaluated Busse's subjective limitations considering the objective findings in the FCE. Since there was credible evidence to support the Board's conclusion that Busse was not disabled from unrestricted police duty, the Board's decision to deny disability benefits was not against the manifest weight of the evidence.

¶ 25                                III. CONCLUSION

¶ 26        The judgment of the circuit court of Will County is affirmed.

¶ 27        Affirmed.